UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDY WHITE,

        Plaintiff,                        Civil Action No. 11-CV-11388

    v.                               District Judge Gerald E. Rosen
                                     Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 13]**

        Plaintiff Randy White brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties filed summary judgment motions (Dkts. 10, 13), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkts. 3, 11).

**I. RECOMMENDATION**

        For the reasons set forth below, this Court finds that the Administrative Law Judge's decision is supported by substantial evidence and conforms with the relevant legal standards. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## II. REPORT

### A. Procedural History

Plaintiff filed an application for disability on September 19, 2007, alleging that he became unable to work on August 5, 2005. (Tr. 85.) The Commissioner initially denied Plaintiff's disability application on January 17, 2008. (Tr. 71-78.) Plaintiff then filed a request for a hearing, and on January 5, 2010, he appeared with counsel before Administrative Law Judge ("ALJ") Melvyn B. Kalt, who considered the case *de novo*. (Tr. 28-97.) In a March 9, 2010 decision, the ALJ found that Plaintiff was not disabled. (Tr. 13-22.) The ALJ's decision became the final decision of the Commissioner on March 23, 2011 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.) Plaintiff filed this suit on April 4, 2011.

### B. Background

Plaintiff was 48 years old at the time of the administrative hearing in this matter. (Tr. 51.) He has a high school education, and worked as a mechanic for the City of Detroit for 26 years. (Tr. 51.)

#### *1. Plaintiff's Testimony*

At the January 5, 2007 hearing before the ALJ, Plaintiff testified regarding his back pain. (Tr. 52.) His back pain is the result of two separate injuries on the job. (Tr. 52.) The first and most significant injury occurred when Plaintiff fell off a truck in April of 2005.[1] (Tr. 52, 190.) Plaintiff testified that he was sent to the medical clinic used by employees of the City of Detroit after his fall. (*Id.*) He subsequently went to see Neurologist David Gaston. (*Id.*) Dr. Gaston prescribed pain

---

[1] Plaintiff did not testify to the second injury, but it appears from the record that he "was also injured in August of 2005 when he slipped and fell on the truck." (Tr. 190.)

killers and rehabilitation. (Tr. 53.) Plaintiff also visited his family physician – Dr. Anthony Harris. (*Id.*) Dr. Harris prescribed Naproxin and back exercises. (*Id.*)

Plaintiff testified that his pain "generates [from his lower back] and runs down through [his] legs." (Tr. 54.) He also testified to stiffness, weakness and heaviness in this legs. (*Id.*) He testified that his right side is worse than his left. (*Id.*) He also testified that there are days where he does not leave the house. (*Id.*)

On an average day, Plaintiff's pain rates at a 7 or 7 ½ out of 10; on a bad day, Plaintiff's pain rates at a 9. (Tr. 55.) Plaintiff relieves his pain by taking his pain medication and laying down. (*Id.*) He spends 4 to 4 ½ hours laying down on a typical day. (*Id.*)

Plaintiff lives with his mother who does the majority of the cooking, laundry, and cleaning. (Tr. 56.) Plaintiff testified that he can stand for about 45 minutes to an hour before he has to sit down. (Tr. 57.) He also stated that he can walk about a block-and-a-half before his pain increases too much. (*Id.*) And, he can only sit for about an hour at a time. (*Id.*) His doctors have told him not to do any heavy lifting, walking, strenuous exercise, bending or twisting. (Tr. 58.) Plaintiff also testified that "a lot of times [his knees] feel like they're on fire and they hurt." (Tr. 59.) Plaintiff currently walks with a cane prescribed by one of his doctors. (Tr. 65.)

### 2. Medical Evidence[2]

On August 29, 2005, Plaintiff was admitted to Sinai-Grace Hospital in serious condition with "end-stage liver disease, more likely secondary to alcohol." (Tr. 152, 164-67.) Plaintiff's prognosis

---

[2] In his brief, Plaintiff makes it clear that the major disability that he is asserting concerns his back. (Dkt. 10, Pl.'s Mot. Summ. J. at 4.) Therefore, this Court's summary of the relevant medical evidence reflects this assertion with the exception of an explanation as to Plaintiff's admission into the hospital.

3

was poor. (Tr. 152.) The emergency room doctor – Dr. Muhammad Akbar – noted that Plaintiff had "a history of excess alcohol." (Tr. 151.) The "Final Report" from the Emergency Room indicated that Plaintiff had: 1) A lower gastrointestinal bleed; 2) Jaundice; 3) Hypokalemia and 4) Hypomagnesemia.[3] (Tr. 163.)

While in the hospital, on August 30, 2005, Plaintiff had an MRI of his back. (Tr. 159.) The MRI showed "mild degenerative arthropathy[4] at several levels." (Tr. 160.) It also showed "[s]mall disc protrusion at L4-L5 and disc degeneration at L3-4 and L4-5 not thought to be causing significant neurologic impingement." (Id.) Dr. Cristina L. Torres indicated that "[i]t may be causing a small amount of radiculopathy[5] at this level, perhaps bilaterally. It appears to be worse on the left." (*Id*.)

On September 1, 2005, Dr. Tessy Jenkins performed a neurologic evaluation on Plaintiff. (Tr. 153.) At that time Plaintiff stated he had "ongoing back pain with significant problems with mobility." (*Id*.) Dr. Jenkins assessed Plaintiff with "[l]ow back pain with no clear radicular symptoms elicited." (Tr. 154.) She indicated that "imaging studies for further evaluation are underway," and recommended "conservative management with physical therapy." (*Id*.)

It appears from the hand-written notes in the record that Dr. Anthony Harris managed Plaintiff's back pain upon discharge from the hospital through November 12, 2009. (Tr. 171-89;

---

[3] Hypokalemia and hypomagnesemia both indicate low levels of magnesium in the blood. PubMed Health, http://www.ncbi.nlm.nih.gov, (last visited February 22, 2012.)

[4] Arthropahy is joint disease. MedicineNet.com, http://www.medterms.com. (last visited February 22, 2012).

[5] Radiculopathy is a disease of the spinal nerve roots characterized by pain which seems to radiate from the spine. MedicineNet.com, http://www.medterms.com. (last visited February 22, 2012).

207-36.) Dr. Harris's notes indicate that Plaintiff suffered from radiculopathy. (Tr. 174, 177, 214.)

On February 23, 2006, Dr. David Gaston, a Neurologist, assessed Plaintiff. (Tr. 201.) He diagnosed Plaintiff with "[m]oderate to severe chronic lumbosacral sprain. Rule out radiculopathy." (*Id.*) Plaintiff continued to see Dr. Gaston from March of 2006 through August of 2006. (Tr. 198-203.) Dr. Gaston's diagnosis did not change during this treatment. (*Id.*)

On July 11, 2006, Dr. Craig S. Smith, a Radiologist at the Advance Radiological Center, performed an x-ray exam of Plaintiff's back and indicated that he had a "normal lumbar spine." (Tr. 200.)

On December 28, 2007, Plaintiff had an evaluation by the Jefferson Medical Industrial Clinic for the State Disability Determination Service (DDS). (Tr. 190.) Dr. Shah assessed Plaintiff with "chronic lower back pain with radiculopathy; status post fall." (Tr. 192.) Dr. Weisenthal, a Radiologist at the clinic, diagnosed Plaintiff with "narrowing of the lumbosacral disc space." (Tr. 197.)

William Joh, M.D., completed a Physical Residual Functional Capacity Assessment of Plaintiff on January 17, 2008.[6] (Tr. 141-48.) He limited Plaintiff to occasionally lifting 20 pounds and frequently lifting 10 pounds. (*Id.*) He also indicated that Plaintiff could stand and/or walk for about 6 hours in an 8-hour workday, and sit the same amount. (*Id.*)

### 3. *Vocational Expert's Testimony*

Vocational Expert ("VE") James Fuller testified at the hearing. (Tr. 65.) The ALJ asked the

---

[6] Interestingly, he diagnosed Plaintiff with Diabetes Mellitus ("DM") with a history of Alcoholic Hepatitis, but did not mention Plaintiff's back pain. (*Id.*) Also interesting is that Dr. Joh stated that there were no treating or examining source statements regarding Plaintiff's physical capacities in the file. (*Id.*)

VE to assume the following hypothetical individual:

> [An individual] capable of performing sedentary work as that term is defined in the regulations but that he requires the ability to sit or stand at any time that he wished, that he'd have to be able to alternate between sitting and standing as he wished, and that he could concentrate at only unskilled types of tasks.

(Tr. 66.)

The VE testified that such a hypothetical individual could not perform Plaintiff's past relevant work as an mechanic, which is classified as skilled at the heavy exertion level. (Tr. 65.) However, such an individual could perform the following jobs: assembly, packaging, and sorting. (Tr. 66.) The VE testified that there are 5,500 of these jobs available in Michigan. (*Id.*) He also testified that if he credited Plaintiff's testimony, specifically the need to lay down for 4 to 4 ½ hours, Plaintiff would not be able to sustain employment. (*Id.*)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are

denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 5, 2005. (Tr. 18.) At step two, the ALJ found that Plaintiff had the following severe impairments: back pain, bilateral knee pain, heptomegaly, hypertension, and diabetes. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to perform "sedentary work as defined in 20 CFR § 404.1567(a) and § 416.967(a) except that he needs to be able to alternate between sitting and standing as needed

and can perform only unskilled tasks." (Tr. 19.) At step four, the ALJ found that Plaintiff could not perform his past relevant work as a mechanic. (Tr. 20.) At step five, the ALJ found that jobs existed in "significant numbers in the national economy that" Plaintiff could perform. (*Id.*)

### E. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d

at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

*1. The ALJ Complied with the Substantive and Procedural Requirements of the Treating Source Rule*

Plaintiff argues that the ALJ committed reversible legal error by failing to give proper weight to Dr. Harris and Dr. Gaston. (Dkt. 10, Pl.'s Mot. Summ. J. at 7-9.) The Commissioner responds that the ALJ's sedentary RFC finding comports with the evidence from these physicians. (Dkt. 13, Def.'s Mot. Summ. J. at 1.) The Court agrees with the Commissioner.

Under the treating source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the]

case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p. And where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he must give the reasons for that finding, and indicate what weight, if any, he is giving the opinion. *Id.*; 20 C.F.R. § 404.1527. This is a clear procedural requirement. *Id.* In complying with this procedural requirement, the ALJ looks to the following list of factors: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id*.

Plaintiff cites Dr. Harris's handwritten notes as supportive of his claim of chronic back pain and radiculopathy. (Tr. 174-89; 207-36.) Plaintiff does not dispute that the ALJ considered these notes in making his decision, but claims that the ALJ's failure to mention Dr. Harris's indication of radiculopathy warrants reversal because it means the ALJ did not give Dr. Harris controlling weight. (Dkt. 10, Pl.'s Mot. Summ. J. at 7-9.) The Court disagrees. At the heart of this argument is the unfounded theory that the ALJ's indication that Plaintiff suffered from "back pain" does not include radiculopathy specifically.

As stated above, there is no requirement that the ALJ discuss every piece of evidence in the administrative record. *Kornecky*, 167 F. App'x at 508. Second, nothing in the ALJ's decision contradicts Dr. Harris's findings. The ALJ finds substantial evidence of back pain, but simply found that "[t]he objective clinical evidence does not corroborate the [Plaintiff's] allegation that he must lie down 4 hours per day." (Tr. 19.) Dr. Harris did not conclude otherwise; nor do his clinical findings, x-rays and notes indicate that Plaintiff must lie down 4 hours per day. (Tr. 171-89, 207-

10

36). Even if the ALJ specifically cited Dr. Harris's finding of radiculopathy, this lack of evidence remains. As such, there is insufficient evidence that the ALJ did not give Dr. Harris controlling weight. Therefore, the procedural requirement of 20 C.F.R. § 404.1527(d)(2) does not apply.

Similarly, there is no evidence that the ALJ failed to give Dr. Gaston's opinion controlling weight. Plaintiff cites Dr. Gaston's records as supportive of his claim that he needs to lay down because "Dr. Gaston reported abnormalities on sensory exam." (Dkt. 10, Pl.'s Mot. Summ. J. at 8.) The ALJ wrote the following regarding Dr. Gaston:

> In February 2006, the claimant was evaluated by neurologist Dr. Gaston for complaints of low back pain. The claimant exhibited a normal motor examination, normal deep tendon reflexes, and mild decreased sensation in his feet. The claimant was diagnosed with moderate to severe chronic lumbosacral sprain. In March 2006, Dr. Gaston noted that the claimant's gait was normal. (Exhibit 5F).

(Tr. 19.)

Nothing in this discussion of Dr. Gaston's treatment of Plaintiff indicates that the ALJ did not properly follow the treating physician rule. (*Id.*) There is no indication that the ALJ ignored the abnormalities that Dr. Gaston noted on Plaintiff's sensory exam. (*Id.*) Indeed, the ALJ specifically stated that Plaintiff exhibited "mild decreased sensation in his feet." (*Id.*) Moreover, nothing in Dr. Gaston's clinical findings and notes indicates that Plaintiff must lie down during the day. (Tr. 198-206). As with Dr. Harris, there is no evidence that the ALJ did not give Dr. Gaston controlling weight, and, concomitantly, the procedural requirement of 20 C.F.R. §404.1527(d)(2) does not apply. In short, the ALJ complied with the treating physician rule.

*2. Substantial Evidence Supports the ALJ's Residual Functional Capacity Assessment*

Plaintiff argues that substantial evidence does not support the ALJ's residual functional capacity ("RFC") assessment of sedentary work with a sit/stand option and unskilled work. (Dkt. 9, Pl.'s Mot. Summ. J. at 7-9.) The Commissioner responds that substantial evidence supports the ALJ's RFC taking into account the ALJ's assessment of Plaintiff's treating sources, Plaintiff's credibility, and the other evidence on the record. (Dkt. 14, Def.'s Mot. Summ. J. at 10-15.)

The ALJ's assessment of Plaintiff's treating sources is discussed in detail above. None of the treating sources indicated that Plaintiff needed to lay down during the day.

Plaintiff also cites Dr. Shah's records as supportive of his argument. (Tr. 190-97.) Dr. Shah is not a treating physician. He examined Plaintiff for the state DDS. (*Id.*) Plaintiff claims that the ALJ's failure to note Dr. Shah's assessment of radiculopathy warrants reversal. (Dkt. 10, Pl.'s Mot. Summ. J. at 19.) This argument fails because nothing in the ALJ's decision contradicts Dr. Shah's finding of radiculopathy. As stated above, the ALJ found substantial evidence of back pain, but simply found that "[t]he objective clinical evidence does not corroborate [Plaintiff's] allegation that he must lie down 4 hours per day." (Tr. 19.) Nothing in Dr. Shah's consultation indicates that Plaintiff must lie down 4 hours per day. (Tr. 190-97). As such, the Court cannot find that the ALJ did not give Dr. Shah's consultation proper weight.

Lastly, Plaintiff also cites the MRI performed on August 30, 2005 as supportive of his testimony that he needs to lie down for 4 hours every day. The ALJ considered the August 30, 2005 MRI in making his decision. (Tr. 19.) However, Plaintiff claims that the ALJ did not fully credit the results of the scan. (Dkt. 10, Pl.'s Mot. Summ. J. at 8.) Notably, the MRI showed "mild

degenerative arthropathy at several levels." (Tr. 160.) It also showed "[s]mall disc protrusion at L4-L5 and disc degeneration at L3-4 and L4-5 not thought to be causing significant neurologic impingement." (*Id*.) Dr. Cristina L. Torres indicated that "[i]t may be causing a small amount of radiculopathy at this level, perhaps bilaterally. It appears to be worse on the left."[7] (*Id*.)

Plaintiff's argument fails for several reasons. First, the doctor that read the MRI – Dr. Torres – never suggested that this "small amount of radiculopathy" required that Plaintiff lay down during the day. (Tr. 153-54.) Second, the doctor that performed Plaintiff's subsequent neurological evaluation – Dr. Tessy Jenkins – never suggested that Plaintiff had to lie down during the day. (Tr. 159-60.) Indeed, Dr. Jenkins suggested conservative management with physical therapy. (*Id*.) Third, this MRI alone does not corroborate Plaintiff's allegations that he must lay down throughout the day. (Tr. 153-54.) Accordingly, substantial evidence supports the ALJ's determination that Plaintiff could perform limited sedentary work. As such, the ALJ's decision should be affirmed.

### G. Conclusion

For the reasons set forth below, this Court finds that the Administrative Law Judge's decision is supported by substantial evidence and conforms with the relevant legal standards. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).

---

[7] Plaintiff testified that his pain was worse on the right. (Tr. 54.)

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Date:   February 27, 2012                               s/Laurie J. Michelson
                                                        Laurie J. Michelson
                                                        United States Magistrate Judge


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 27, 2012.

                                                        s/Jane Johnson
                                                        Deputy Clerk